IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| SAMAD SEFIANE | § | |
| VS. | § | CIVIL ACTION NO. 1:19-cv-415 |
| DIRECTOR, TDCJ-CID | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Petitioner Samad Sefiane, a prisoner confined at the Bell Unit of the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se*, filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.

The Petition was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Factual Background

Petitioner is in custody pursuant to a judgment entered in the Criminal District Court of Jefferson County, Texas, in cause number 17-27943. Petitioner was charged with the first degree felony offense of aggravated assault involving family violence. The indictment charged that Petitioner "did then and there intentionally and knowingly and recklessly cause serious bodily injury to Castle Spaugh . . . a person whose relationship and association with the Defendant is described by Section 71.005 of the Texas Family Code, by striking the Complainant with a deadly weapon, to-wit: a hammer, that in the manner of its use and intended use is capable of causing bodily injury and death." (Doc. #28-3 at 5.) A jury found Petitioner guilty of the offense. On May 2, 2018, Petitioner

was sentenced to twenty years of imprisonment and fined $10,000, in accordance with the jury's verdict. (Doc. #28-3 at 70-73.)

Petitioner filed a Notice of Appeal (Doc. #28-3 at 78). Petitioner raised three issues on direct appeal. First, Petitioner challenged the trial court's denial of the defense's motion for a mistrial. Second, Petitioner alleged that the trial court erred by admitting the weapon into evidence. Finally, Petitioner contends the evidence was insufficient to prove that he and the victim were members of the same household. The Ninth Court of Appeals summarized the evidence as follows:

> Bradley Brister testified that on January 21, 2017, he and his brother were staying at the dwelling where Sefiane and the victim, C.S., were also living. Brister testified he heard arguing and fighting, and when he entered the living room, he saw C.S. and Sefiane arguing. Brister explained that C.S. was sitting in a chair, and he saw Sefiane get up, grab a hammer, walk over to C.S., and strike C.S.'s head. According to Brister, Sefiane "went to swing again," and Brister then took the hammer from Sefiane and called 911. Brister explained that the hammer had a maul on one side and a splitting wedge on the other side. Brister testified that C.S. did not have anything except possibly a beer in his hands, and C.S. was not behaving aggressively.
>
> When shown a hammer that the prosecutor identified as State's Exhibit 48, Brister testified that the hammer appeared to be the same one that he grabbed from Sefiane. Brister stated that the hammer was red and was a splitting maul[.]" Defense counsel objected that "[t]here has been no chain of custody or testimony as to where and how and whatever. This witness has said it looks like the hammer, but there [are] no identifying marks. There [are] no initials. We would object at this time[.]" The trial judge overruled the objection and stated that he was admitting the hammer into evidence based upon Brister's affirmative answer to the question of whether the hammer appeared to be the same one that was used at the time. Brister also stated that photographs of the hammer, which were admitted as State's Exhibits 44, 45, and 46, appeared to show the same hammer he grabbed from Sefiane's hand.
>
> C.S. testified that he and Sefiane lived together with other individuals for three to five months in a home owned by their landlord. According to C.S., he was trying to get on his fee, and his landlord helped him. C.S. explained that he and Sefiane remodeled one of the rooms of the home together. C.S. testified that all of the people in the home "needed help, and we leaned on each other." According to C.S., the residents of the home shared a living room and a kitchen. C.S. explained that on the day of the incident, he fell asleep on the recliner, and the next thing he recalled was

> one of the residents shaking him, asking him if he was all right, and telling C.S. that an ambulance was on its way. C.S. testified that he required emergency brain surgery to reconstruct his skull.
>
> . . . .
>
> Detective Jerry Jackson of the Beaumont Police Department testified that he responded to the scene and investigated the offense. According to Jackson, the weapon used in the assault was a small splitting maul, and he testified that State's Exhibit 48 appeared to be the same one. Jackson testified that the tool constituted a deadly weapon. Officer Erin Smith, who also responded to the scene, testified that there was "a hammer or a maul, an axe-tip sledge hammer, in the living room of the residence. Smith testified that Exhibit 48 appeared to be the same or similar to the hammer that he saw that day.
>
> Officer Daniel Norsworthy of the Beaumont Police Department testified that he responded to the scene. According to Norsworthy, he rode in the ambulance with Sefiane, and without questioning by Norsworthy, Sefiane voluntarily made statements at that time. A copy of a video recording containing Sefiane's statements was admitted as State's Exhibit 49 and played for the jury. On the recording, Sefiane made statements regarding hitting C.S. with a hammer due to being angry about being punched and disrespected by C.S.
>
> Sefiane testified that he struck C.S.'s head with a hammer, but he denied that the hammer in evidence was the same hammer. According to Sefiane, he struck C.S. because he feared for his life. Sefiane testified that C.S. had previously threatened him with physical harm. Sefiane testified that C.S. struck his face. Sefiane then grabbed the first object that he could reach and struck C.S.

*Sefiane v. State*, No. 09-18-00216-CR, 2019 WL 2439490, at *1-2 (Tex. App.–Beaumont 2019, pet. ref'd). The court of appeals found that the evidence was sufficient to support Petitioner's conviction, the trial court did not abuse its discretion by denying Petitioner's motion for a mistrial, and the admission of the hammer into evidence was proper and did not affect Petitioner's substantial rights. Accordingly, the court of appeals affirmed the judgment. Petitioner filed a Petition for Discretionary Review, which the Texas Court of Criminal Appeals refused on August 21, 2019.

3

Petitioner filed a state application for habeas relief. On January 8, 2020, the Texas Court of Criminal Appeals denied the application without written order. (Doc. #27-1 at 4.)

## The Petition

Petitioner contends his attorney provided ineffective assistance by failing to: (1) argue that a search and Petitioner's arrest violated the Fourth Amendment because those actions were taken without warrants; (2) challenge the indictment; (3) investigate and raise potential defenses; and (4) argue that the family violence statute did not apply because Petitioner was not related to the victim.[1] Petitioner alleges the prosecution committed misconduct by fabricating evidence that Petitioner was in a relationship with the victim. Petitioner challenges the deadly weapon finding because the weapon involved in the offense was a hammer, not a firearm. Petitioner contends his rights under the Vienna Convention were violated because consular officials from his home country were not notified of his arrest and Petitioner did not have the opportunity to consult with consular officials.[2]

## Standard of Review

Title 28 U.S.C. § 2254 authorizes the district court to entertain a petition for writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment if the prisoner is in

---

[1] When summarizing Petitioner's ineffective assistance of counsel claims during the state habeas proceedings, the trial court found "that the supporting facts . . . consist mostly of incoherent ramblings and stream-of-consciousness-type assertions such that this Court fails to clearly understand . . . the nature of the purported errors. . . ." (Doc. #28-43 at 90.) With respect to his remaining claims, the trial court noted that the "supporting 'facts' ramble from pillar to post, with apparently little purpose, planning, or thought put into providing this Court with clear and concise facts showing a particular constitutional violation. . . ." (Doc. #28-43 at 92.) Likewise, the federal Petition is not a model of clarity. Petitioner raises claims without providing supporting facts, and incoherent assertions that do not appear to raise constitutional claims.

[2] In addition to these claims, Petitioner raises claims that are more appropriately brought in a civil action, such as excessive force, malicious prosecution, and legal malpractice. Because those claims do not affect the validity of Petitioner's conviction or sentence, they are not habeas claims and will not be addressed in this Petition.

custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). The court may not grant relief on any claim that was adjudicated in state court proceedings unless the adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;[3] or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court reaches a conclusion opposite to a decision reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An application of clearly established federal law is unreasonable if the state court identifies the correct governing legal principle, but unreasonably applies that principle to the facts. *Id*. State court decisions must be given the benefit of the doubt. *Renico v. Lett*, 559 U.S. 766, 773 (2010).

The question for federal review is not whether the state court decision was incorrect, but whether it was unreasonable, which is a substantially higher threshold. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). If the decision of the highest state court is not accompanied by an explanation of the court's reasoning, federal courts must look to the last state court decision that does provide an explanation for the decision. *Wilson v. Sellers*, __ U.S. __, 138 S. Ct. 1188, 1192 (2018). There is a rebuttable presumption that the unexplained ruling adopted the same reasoning. *Id*. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v.*

---

[3] In making this determination, federal courts may consider only the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

*Richter*, 562 U.S. 86, 98 (2011); *see also Johnson v. Williams*, 568 U.S. 289, 293 (2013) (holding there is a rebuttable presumption that the federal claim was adjudicated on the merits when the state court addresses some claims, but not others, in its opinion).

This court must accept as correct any factual determinations made by the state courts unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e). The presumption of correctness applies to both implicit and explicit factual findings. *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell*, 274 F.3d 941, 948 n. 11 (5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."). Deference to the factual findings of a state court is not dependent upon the quality of the state court's evidentiary hearing. *See Valdez*, 274 F.3d at 951 (holding that "a full and fair hearing is not a precondition to according § 2254(e)(1)'s presumption of correctness to state habeas court findings of fact nor to applying § 2254(d)'s standards of review.").

Analysis

*I. Ineffective Assistance of Counsel*

Petitioner alleges that he was denied the effective assistance of counsel. In order to establish an ineffective assistance of counsel claim, Petitioner must prove counsel's performance was deficient, and the deficient performance prejudiced Petitioner's defense. *Strickland v. Washington*, 466 U.S. 668 (1984). Because Petitioner must prove both deficient performance and prejudice, failure to prove either will be fatal to his claim. *Johnson v. Scott*, 68 F.3d 106, 109 (5th Cir. 1995).

Judicial review of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689. There is a strong presumption that counsel rendered reasonable, professional assistance and that the

challenged conduct was the result of a reasoned strategy. *Id*. To overcome the presumption that counsel provided reasonably effective assistance, Petitioner must prove his attorney's performance was objectively unreasonable in light of the facts of Petitioner's case, viewed as of the time of the attorney's conduct. *Id*. at 689-90. A reasonable professional judgment to pursue a certain strategy should not be second-guessed. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).

In addition to demonstrating counsel's performance was deficient, Petitioner must also show prejudice resulting from counsel's inadequate performance. *Strickland*, 466 U.S. at 691-92. Petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Petitioner must show a substantial likelihood that the result would have been different if counsel performed competently. *Richter*, 562 U.S. at 112. To determine whether Petitioner was prejudiced, the court must consider the totality of the evidence before the fact-finder. *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010).

Analysis of an ineffective assistance claim on federal habeas review of a state court conviction is not the same as adjudicating the claim on direct review of a federal conviction. *Richter*, 562 U.S. at 101. The key question on habeas review is not whether counsel's performance fell below the *Strickland* standard, but whether the state court's application of *Strickland* was unreasonable. *Id*. Even if Petitioner has a strong case for granting relief, that does not mean the state court was unreasonable in denying relief. *Id*. at 102.

### A. Pre-trial Preparation

Petitioner claims that his attorney failed to investigate and pursue potential defenses. An attorney is required to conduct a reasonable amount of pre-trial investigation. *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986). The defense of a criminal case does not "contemplate the employment of wholly unlimited time and resources." *Smith v. Collins*, 977 F.2d 951, 960 (5th Cir. 1992). An attorney is not necessarily ineffective for failing to investigate every conceivable, potentially non-frivolous matter. *Id.* Further, "brevity of consultation time" with a client does not, by itself, rise to the level of ineffective assistance of counsel. *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984). Petitioner must describe the evidence additional investigation would have uncovered, and he must also demonstrate that it would have changed the outcome of the criminal proceeding. *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005).

Petitioner's claim that his attorney failed to raise self-defense at trial is factually incorrect. His attorney presented evidence supporting Petitioner's claim of self-defense, and the jury was given an instruction on self-defense. (Doc. #28-3 at 43.) In addition, Petitioner has not demonstrated that counsel's pre-trial preparation was deficient. There is no indication from the record that additional investigation, preparation, strategizing, or consultation with Petitioner would have located evidence or witnesses that could be used to aid Petitioner's defense. "Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998). Petitioner also failed to show that he was prejudiced by counsel's performance. As a result, the state court's rejection of Petitioner's claims of ineffective assistance of counsel is a reasonable application of *Strickland*.

### B. Application of Family Violence Statute

Petitioner asserts that his attorney should have challenged the indictment by arguing that the family violence statute did not apply in this instance because Petitioner was not related to the victim. In a related claim, Petitioner alleges that the prosecutor committed misconduct by fabricating evidence that Petitioner was in a relationship with the victim.

A thorough review of the state court records reflects that the State did not fabricate or present any evidence that Petitioner was in a relationship with the victim. The State presented evidence that Petitioner was living in the same same household at the time of the offense, which is all that is required to prove the family violence element of the offense. TEX. PENAL CODE ANN. § 22.02(b)(1) ( aggravated assault is a first degree felony if the defendant used a deadly weapon and caused serious bodily injury to a person whose association with the defendant is described by § 71.005 of the Texas Family Code); TEX. FAM. CODE ANN. § 71.005 ("'Household' means a unit composed of persons living together in the same dwelling, without regard to whether they are related to each other."). As a result, the claims concerning the application of the family violence statute and counsel's failure to challenge the indictment lack merit.

## II. Deadly Weapon Finding

Petitioner claims that there was insufficient evidence to prove he used a deadly weapon during the offenses because a hammer is not a deadly weapon. Petitioner mistakenly believes that only firearms are classified as deadly weapons, but, under Texas law, a deadly weapon can be "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(B). A hammer is considered to be a deadly weapon if the defendant uses it in a manner that could cause death or serious bodily injury. *Fino v. State*,

No. 11-13-00370-CR, 2015 WL 9584129, at *2 (Tex. App.–Eastland Dec. 31, 2015, no pet.). The evidence in this case showed that Petitioner hit the victim in the head with a hammer and the victim needed an emergency brain surgery to reconstruct his skull. This evidence is sufficient to prove beyond a reasonable doubt that the hammer was a deadly weapon in the manner it was used.

### III. Violations of the Vienna Convention

Petitioner alleges that consular officials from his home country were not notified of his arrest and he did not have the opportunity to consult with consular officials, in violation of the Vienna Convention on Consular Relations. The Fifth Circuit has held that the Vienna Convention on Consular Relations does not provide defendants with an individually enforceable right. *Cardenas v. Stephens*, 820 F.3d 197, 203 (5th Cir. 2016). As a result, Petitioner is not entitled to relief on either of these grounds.

### IV. Procedural Default

Finally, Petitioner alleges his attorney failed to argue that a search and Petitioner's arrest violated the Fourth Amendment. Respondent argues that this claim is unexhausted because it has not been presented to the Texas Court of Criminal Appeals, and Petitioner would be barred from raising the claim in a successive state habeas application.

As a prerequisite to obtaining relief under § 2254, a prisoner must first exhaust available state remedies. 28 U.S.C. 2254(b). A prisoner has not exhausted remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). In Texas, all claims must be presented to, and ruled on by, the Texas Court of Criminal Appeals. *Tigner v. Cockrell*, 264 F.3d 521, 526 (5th Cir. 2001); *Richardson v. Procunier*, 762 F.2d 429, 431-32 (5th Cir. 1985). The claims may be presented to the Texas Court of Criminal Appeals during the

direct appeal process or in a collateral attack brought pursuant to Article 11.07 of the Texas Code of Criminal Procedure. *Myers v. Collins*, 919 F.2d 1074, 1076 (5th Cir. 1990). In this case, Petitioner failed to raise the ineffective assistance of counsel claim on direct appeal or in his state application for habeas relief. Therefore, the claim is unexhausted.

Federal habeas review of a claim is procedurally barred if the last state court to consider the claim expressly and unambiguously denied relief based on a state procedural default. *Meanes v. Johnson*, 138 F.3d 1007, 1010 (5th Cir. 1998). Federal review is also barred:

> if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred. In such a case there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims.

*Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *see also Nelson v. Davis*, 952 F.3d 651, 662 (5th Cir. 2020). In this case, if Petitioner were to present the unexhausted claim to the Texas Court of Criminal Appeals, the court would not consider the merits of the claims. State law prohibits Texas courts from considering the merits of, or granting relief based on, a subsequent writ application filed after the final disposition of the inmate's first application unless he demonstrates cause or actual innocence. TEX. CODE CRIM. PROC. art. 11.07 § 4; *see Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) ("[T]he Texas abuse of the writ doctrine prohibits a second habeas petition, absent a showing of cause, if the petitioner urges grounds therein that could have been, but were not, raised in his first habeas petition.").

Where a state prisoner has defaulted his federal claims in state court by failing to follow applicable state procedural rules, the claims may not be reviewed in federal court unless the petitioner demonstrates cause for the default and actual prejudice as a result of the alleged error, or

that a miscarriage of justice will occur if the federal courts do not consider the claim. *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992); *Nelson*, 952 F.3d at 662. To show cause for the procedural default, Petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Moore v. Roberts*, 83 F.3d 699, 704 (5th Cir. 1996). To show prejudice, Petitioner must demonstrate that the error actually and substantially disadvantaged him. *Gonzales v. Davis*, 924 F.3d 236, 242 (5th Cir. 2019).

Petitioner has not shown cause for the procedural default because the unexhausted claim could have been raised in his state habeas application. Because Petitioner failed to show cause for the procedural default, the Court need not consider whether he was prejudiced. *Meanes*, 138 F.3d at 1011. Further, Petitioner has not demonstrated that a miscarriage of justice will occur if the federal court does not consider the merits of his claim. Therefore, Petitioner's claim that counsel failed to argue a Fourth Amendment violation is procedurally barred from federal review.

## Recommendation

This Petition for Writ of Habeas Corpus should be denied.

## Objections

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings, conclusions and

recommendations and from appellate review of the factual findings and legal conclusions accepted by the district court, except on grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

**SIGNED this the 18th day of July, 2022.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE